UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMBER REINECK HOUSE, et al.

      Plaintiffs,

v.                                  Case No.: 20-cv-10203
                                      District Judge Paul D. Borman

CITY OF HOWELL, et al.,         Magistrate Judge Curtis Ivy, Jr.

      Defendants.             /

## ORDER REGARDING PARTIES' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (R&R) ON MOTIONS TO EXCLUDE EXPERTS (ECF NOS. 42, 43, 45, 46, 47, 49) (ECF NO. 69)

The Court has reviewed, *de novo*, the record, the Magistrate Judge's R&R, and the parties' objections to the Magistrate Judge's R&R. (ECF Nos. 69, 70, 75, 76, 78.)[1]

Plaintiffs filed motions to exclude four of Defendants' designated experts; Defendants filed motions to exclude two of Plaintiffs' designated experts. (ECF Nos. 42, 43, 45, 46, 47, 49.)

### LEGAL BACKGROUND

Federal Rule of Evidence 702 requires the trial judge to perform a gatekeeping role when considering the admissibility of expert testimony, as follows:

---

[1] The Court notes that, in light of its *de novo* review, Defendants' Objection to the R&R's "Factual Background" (ECF No. 70, at PageID.8584) is moot.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Two Supreme Court decisions require the district courts to ensure that proposed expert testimony rests on a reliable foundation and is relevant to that task: *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. Ltd. v. Carmichael*, 536 U.S. 137 (1999).

The gatekeeping function has been described by the United States Court of Appeals for the Sixth Circuit as an "obligation…to exclude from trial expert testimony that is unreliable and irrelevant." *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002) (internal quotation marks omitted).

As Magistrate Judge Ivy noted:

> The gatekeeping role progresses in three steps. First, the witness must be qualified according to his or her "knowledge, skill, experience, training, or education." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting Fed. R. Evid. 702). Second, the expert's testimony must be relevant, in that it will help "the trier of fact to understand the evidence or to

2

determine a fact in issue." *Id*. "Whether an opinion 'relates to an issue in the case' or helps a jury answer a 'specific question' depends on the claims before the court." *Madej v. Maiden*, 951 F.3d 364, 370 (6th Cir. 2020). "Thus, when analyzing the relevancy of expert testimony, a court should consider the elements that a plaintiff must prove." *Id*.

Third, the testimony must be reliable. To determine whether expert testimony is "reliable," the court's role, and the offering party's responsibility, "is to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152. The proponent of the testimony bears the burden to prove by a preponderance of the evidence that the testimony is reliable. *Wellman v. Norfolk & Western Railway Co.*, 98 F. Supp. 2d 919, 923 (S.D. Ohio 2000) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)). Courts are not required to admit opinions or conclusions that are "connected to existing data only by the *ipse dixit* of the expert." *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

*Daubert* outlines several factors for courts to consider when evaluating the reliability of a witness's testimony. These factors include: (1) whether a "theory or technique . . . can be (and has been) tested;" (2) whether the theory "has been subjected to peer review and publication;" (3) whether, with respect to a particular technique, there is a high "known or potential rate of error" and whether there are "standards controlling the technique's operation;" and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007) (citing *Daubert*, 509 U.S. at 592-94). This inquiry is "flexible," however, and *Daubert's* factors "do not constitute a definitive checklist or test." *Kumho Tire Co.*, 526 U.S. at 150 (emphasis in original, citation and internal quotation marks omitted).

Not all the factors apply in every case, especially where, as here, the proposed experts provided non-scientific opinions and testimony. In *Kumho Tire*, the Supreme Court explained "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." 526 U.S. at 141-42. When evaluating the reliability of non-scientific expert testimony, the district court may forgo these factors and focus on the reliability of the expert's personal knowledge or experience. *Thomas v. City of Chattanooga*, 398 F.3d 426, 431-32 (6th Cir. 2005). In this situation, the expert cannot ask a court simply to take his "word for it," but "'must explain how that experience leads to the conclusion reached . . . and how that experience is reliably applied to the facts.'" *Id*. at 432 (quoting Fed. R. Evid. 702 adv. comm. note).

"[R]ejection of expert testimony is the exception, rather than the rule, and [the court] will generally permit testimony based on allegedly erroneous facts when there is some support for those facts in the record." *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 530 (6th Cir. 2008) (internal quotations and citations omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also Wellman v. Norfolk and Western Ry. Co.*, 98 F. Supp. 2d 919, 924 (S.D. Ohio 2000) (The Court's gatekeeper role "is not intended to supplant the adversary system or the role of the jury.") (citing *Daubert*, 509 U.S. at 596).

(ECF No. 69, at PageID.8524-25.)

4

# ANALYSIS

This Court proceeds to the specific proposed expert witnesses, the parties'

Motions, and Magistrate Judge Ivy's recommendations:

**A.    Defendants' Motion to Exclude Plaintiffs' proposed expert, Jeffery Van Treese. (ECF No. 42.)**

Van Treese was to provide an expert opinion regarding the number of

women's recovery residences needed in Howell. In his analysis, Magistrate Judge

Ivy found that Van Treese's opinion testimony is irrelevant: "The number of

recovery residences Howell should have for women is not an issue in the case."

(ECF No. 69, at PageID.8528.) He concluded: "Defendants' Motion to exclude

Jeffery Van Treese as an expert witness (ECF No. 42) should be granted." (ECF

No. 69, at PageID.8531.) This Court agrees.

**B.    Plaintiffs' Motion to Exclude Defendants' proposed damages expert, Patrick O'Keefe. (ECF No. 43.)**

Because the Court will be bifurcating the trial, beginning with the liability

phase, and if liability is found, only then proceed to a damages phase, the Court

will hold this Motion in abeyance until the conclusion of the liability phase.

**C.    Plaintiffs' Motion to Exclude Defendants' proposed expert, Richard Carlisle. (ECF No. 45.)**

1. Qualification

Carlisle worked as a community planning consultant for the City of Howell.

Magistrate Judge Ivy noted: "Plaintiffs do not contest Carlisle's qualification to

testify as an expert witness on city planning and zoning," (ECF No. 69, at

PageID.8546), and Carlisle "has been qualified as an expert witness in the Eastern

District of Michigan. (ECF No. 53-2, PageID.7301.)" (ECF No. 69, at

PageID.8547.)

    2.  Expert Opinion

Magistrate Judge Ivy recommended excluding all of Carlisle's "expert"

opinions. (ECF No. 69, at PageID.8552.) Breaking down Carlisle's four opinions:

> i.    Defendant City of Howell advanced a
> legitimate governmental interest in
> protecting public health, safety, and welfare
> while allowing for a reasonable
> accommodation for persons with disabilities
> in its handling of Plaintiffs' special use
> application and the adoption of new zoning
> ordinances.

This Court concludes that because this opinion embraces an ultimate legal

issue in this case—whether Howell acted based on "legitimate" interests and

treated Plaintiffs "reasonably" rather than discriminatorily—Carlisle is excluded

from opining as an expert on this issue.

> ii.    Howell has never questioned the need for
> sober living houses.

Whether Howell has ever questioned the need for sober living houses is a

fact issue to be determined by the jury. Carlisle's personal involvement with the

City of Howell does not automatically support deeming Carlisle an expert witness

on this issue. He can, however, testify as a fact witness that he has seen Howell

permit sober living homes in the past.

> iii.    In his capacity as the Zoning Administrator, Mr. Schmitt
> made an interpretation that the proposed sober living
> home was similar but not identical in nature to an adult
> foster care home. A major distinction between adult
> foster care homes and sober living homes is that adult
> foster care is licensed. It is appropriate for the Zoning
> Administrator to make reasonable interpretation of the
> Zoning Ordinance. By providing such an interpretation,
> Mr. Schmitt was making a reasonable accommodation to
> allow the application for sober living, a use that was not
> otherwise mentioned in the Zoning Ordinance.

The Court will not allow Carlisle to opine that Schmitt acted reasonably or

provided for a reasonable accommodation, because these opinions could suggest to

the jurors that they must conclude that Schmitt did not act discriminatorily and that

Schmitt handled Plaintiffs' later reasonable accommodation claim appropriately.

That said, the Court will allow Carlisle to testify to his general opinion

here—that Schmitt acted within his discretion and in accordance with sound

planning principles—as long as Carlisle makes clear that it reflects his perspective

as a *planner* who is applying planning principles, and not opining on the law, or on

Schmitt's subjective intent.

      iv.     Howell has historically recognized its responsibility to protect the health, safety, and welfare of its residents, including those with disabilities.

The Court concludes that Carlisle may not testify to this statement as an expert. However, he can testify as a fact witness to specific actions Howell has taken to benefit its disabled residents in the past.

     3.  Rebuttal Testimony

If Plaintiffs' proposed expert witness Brian Connolly testifies that the City of Howell zoning ordinance places greater burdens on disabled persons, Carlisle can testify in response as an expert on this issue.

The Court agrees with Magistrate Judge Ivy's conclusion that Carlisle should be precluded from offering an expert legal opinion that Howell "didn't violate any laws" or "exhibit a pattern of discrimination." (ECF No. 69, at PageID.8554.)  This Court adds that Connolly also may not testify as an expert on ultimate legal conclusions.

     4.  Additional Fact Testimony

Carlisle may testify as a fact witness that sober-living houses are not required to have a license from the State of Michigan, if the parties do not stipulate to that fact.

**D.     Plaintiffs' Motion to Exclude Defendants' proposed expert, Rodney Arroyo. (ECF No. 46.)**

1.  Testimony Outside the Scope of Expertise

The Court agrees with Magistrate Judge Ivy's conclusion that Arroyo

"should not be permitted to testify to the[] purpose" of sober living homes, nor to

"the effects of a poorly run home," because he is "not an expert on sober living

homes." (ECF No. 69, at PageId.8558); *see also* 29 Charles Alan Wright & Arthur

Miller, Fed. Prac. & Proc. Evid. § 6264.2, n.14 and accompanying text (2d ed.

2021) ("[C]ourts will prevent a witness from testifying as an expert where the

witness has specialized knowledge on one subject but offers to testify on a

different subject" (citing, among other cases, *Coal Res., Inc. v. Gulf & W. Indus.,

Inc.*, 954 F.2d 1263, 1269 (6th Cir. 1992), opinion clarified (Apr. 22, 1992))); *In re

Com. Money Center, Inc.*, 737 F. Supp. 2d 815, 844 (N.D. Ohio 2010). Indeed,

Arroyo has admitted that he has no expertise on substance abuse nor on sober

living and drug recovery homes. (ECF No. 44-37, at PageIDs.2847, 2866.)

Although Defendants assert that Arroyo's expertise can be "transferred to the

specific area of *zoning* for sober living homes," (ECF No. 70, Objections to R&R,

PageID 8609) (larger emphasis removed), they do not argue that his expertise can

be extended to the general *purpose* of sober living homes or to the *results* of their

mismanagement. Nor do Defendants argue that these topics are subsets of the

larger topic of planning and zoning.

9

2.  Impermissible Legal Opinions

Magistrate Judge Ivy notes that Arroyo "quotes and/or paraphrases the 2020 amended [Howell] ordinance sections related to transitional housing," "explains the meaning of th[ose] subsection[s]," and then "sometimes[] opines that [a] subsection is 'reasonable.'" (ECF No. 69, at PageID.8558.) As an example, Magistrate Judge Ivy highlights that Arroyo's report notes that Ordinance Section 6.29(c)(2) imposes a "reasonable condition" on applicants seeking a special accommodation use. (ECF No. 69, at PageID.8558-59) (quoting ECF No. 46-2, at PageID.4023). Magistrate Judge Ivy also notes that Arroyo's report "comments on the consistency of an ordinance subsection with the Michigan Zoning Enabling Act ('MZEA')." (ECF No. 69, at PageID.8558-59) (quoting ECF No. 46-2, at PageID.4025).

This Court disagrees with Magistrate Judge Ivy's conclusion that Arroyo may not opine on whether the City's planning actions were consistent with or responsive to the MZEA. As a planning expert, Arroyo must be allowed to opine on whether a provision "represents a planning best practice," (ECF No. 46-2, PageID 4024), or is "customary," (ECF No. 46-2, PageID 4027), based on his experience as a planner. Because planners regularly consult the MZEA, Arroyo should also be allowed to opine on whether the City complied with that statute as it is understood by the planning—but not the legal—community. *Cf. Phillips v.*

10

*Calhoun*, 956 F.2d 949, 952 (10th Cir. 1992) (affirming the district court for

"merely permit[ing] the city's personnel director and his counterpart . . . to offer

their understanding of the customary meaning and usage of [dispositive] terms" in

the City's Charter). This may help the jury determine why Howell's planners

drafted the Moratorium and the new Ordinance as they did.

The Court notes that, when Arroyo discusses the MZEA, he must emphasize

that he is not offering an opinion on the actual legal effect of the statute, but rather

is explaining how planners interpret it and incorporate it into their decision-

making. Further, if Arroyo discusses the MZEA, the jury will be instructed that

that statute does not govern the outcome of this case. *Cf. Specht v. Jensen*, 853

F.2d 805, 809–10 (10th Cir. 1988) ("[A]n expert's testimony is proper under Rule

702 if the expert does not attempt to define the legal parameters within which the

jury must exercise its fact-finding function.").

On the other hand, the Court agrees with Magistrate Judge Ivy's restriction

of Arroyo's use of "reasonable." Arroyo can recite the terms "reasonable" and

"reasonable accommodation" as they appear in the text of the MZEA and the new

ordinances. But he cannot opine on whether an action taken by the City was

reasonable or whether a request was for a reasonable accommodation, because

such opinions might suggest a final decision to the jury, especially with respect to

the latter opinion and Plaintiffs' reasonable accommodation claim. Instead, Arroyo

11

should use language that more specifically captures the import of his testimony.

For example, he can opine that an action taken by the City "reflect[ed] the City's

Master Plan" (ECF No. 46-2, Arroyo Report, PageID 4043), "represent[ed] a

planning best practice" (ECF No. 46-2, PageID 4024), was "in conformance with

the AICP Code" (ECF No. 46-2, PageID 4043), or is "customary" (ECF No. 46-2,

PageID 4036) amongst planners.

Additionally, Arroyo may not opine that the City "has a dual requirement" to

follow the MZEA and the FHA, because that is a purely legal opinion that directly

relates to the legal framework for deciding this case.

An additional issue raised by Magistrate Judge Ivy is whether to exclude

Arroyo's opinion that Defendant Tim Schmitt's September 2019 letter to Plaintiff

Atsalakis in response to her second request for accommodation was not a denial of

her request. (ECF No. 69, at PageID.8562.) The Court agrees that this opinion

should be excluded, both because it resolves an ultimate legal sub-issue of

Plaintiffs' reasonable accommodation claim, and because Defendants have not

explained how Arroyo "use[d] any special expertise to" arrive at it. (ECF No. 69, at

PageID.8562.)

3. Rebuttal Testimony

The Court agrees with Magistrate Judge Ivy's conclusion that "Arroyo may

be offered to rebut Connolly's testimony as stated in Arroyo's report." (ECF No.

69, at PageID.8563.) The Court does not at this point find that this rebuttal is irrelevant.

### 4. Opinion on Defendants' States of Mind

The Court agrees with Magistrate Judge Ivy's conclusion that Arroyo may not "infer for the jury or the Court that [any] facts demonstrate [the Defendants'] intent[s], motive[s] or state[s] of mind." (ECF No. 69, at PageID.8563) (quoting *Visteon Glob. Tech., Inc. v. Garmin Int'l, Inc.*, No. 10-cv-10578, 2016 WL 4396085, at *4 (E.D. Mich. Aug. 18, 2016)).

### 5. Reliability

This Court agrees with Magistrate Judge Ivy's conclusion to reject Plaintiffs' accusations that Arroyo's "opinions were conceived and invented solely in the context of this litigation" and "Arroyo's relationship with defense counsel makes Arroyo's opinions and testimony unreliable." (ECF No. 69, at PageID.8564) (citing ECF No. 46, at PageID.3721-22, 3733-35). As Magistrate Judge Ivy explained:

> Arroyo is a certified planner whose work experience is in crafting and evaluating city plans and zoning ordinances. Arroyo's work for Defendants' counsels' law firm does not appear to predominate his work—he is a partner in a planning firm and still provides planning and zoning services to cities in Michigan in addition to his expert services. The fact that he has testified in prior matters as an expert for counsel, without more indicia of unreliability, is not enough to strike the opinions and testimony.

(ECF No. 69, at PageID.8564.)

13

**E.** **Defendants' Motion to Exclude Plaintiffs' proposed expert, Brian Connolly. (ECF No. 47.)**

1. Qualification

Defendants contend that Connolly is not qualified as an expert "because he only has two years of experience as an urban planner," he is not a certified planner, and "most of his experience (eight years) is working as an attorney in Colorado specializing in land use law." (ECF No. 69, at PageID.8565.) Defendants further assert that, "except for a book he co-authored, all his other publications were not peer-reviewed," and thus "no more than a lawyer's opinion." (ECF No. 69, at PageID.8565) (citing ECF No. 47, at PageID.4105-06).

Plaintiffs respond that Connolly is currently Chair of the Planning and Law Division of the American Planning Association, and he co-authored a book in 2014 titled *Group Homes: Strategies for Effective and Defensible Planning and Regulation,* which was peer reviewed. (ECF No. 69, at PageID.8566) (citing ECF No. 47-4, at PageID.4378-84). Plaintiffs also note that Connolly has given many presentations, including on group homes for those in recovery and the opioid/heroin crisis and land use (ECF No. 69, at PageID.8566-67) (citing ECF No. 47-4, at PageID.4385), and has testified as an expert on community planning in four cases. (ECF No. 69, at PageID.8567.)

The Court agrees with Magistrate Judge Ivy that Connolly is qualified to offer opinions as an expert in this case, even though he is not a certified planner

14

and has not spent his entire career as a certified planner. (ECF No. 69, at

PageID.8568.) Defendants, of course, are able to cross-examine Connolly on his

planning credentials.

      2.  Reliability and Prejudice

In their initial motion to exclude Connolly, Defendants argue that his "expert

report, opinion, and testimony are unreliable" and unduly prejudicial. (ECF No. 47,

at PageID.4107-11) (capitalization removed). These arguments focus on the

sources, facts, and assumptions on which Connolly relies.

But while Defendants criticize the alleged factual inaccuracies in Connolly's

report, they do not meaningfully address the supplemental report that Connolly

produced in response to these criticisms. (ECF No. 69, at PageID.8570.) For this

reason, the Court agrees with Magistrate Judge Ivy that these criticisms do not

provide a basis to exclude Connolly. (ECF No. 69, at PageID.8570-71.)

Neither will the Court exclude Connolly for his alleged insufficient

explanation of his methodology in his report. Defendants' concerns with Connolly's

reliability and what they deem to be factual inaccuracies and insufficient

explanations can be raised through cross-examination, by contrary evidence, and in

jury instructions.

3. Impermissible Legal Conclusions

The Court will not at this stage exclude any of Connolly's proposed

testimony for containing impermissible legal conclusions, because Defendants did

not sufficiently raise this issue in their initial motion to exclude Connolly.

However, Defendants may object at trial if Connolly begins to testify to any

improper legal conclusions.

**F.      Plaintiffs' Motion to Exclude Defendants' proposed expert, Gerald Fisher. (ECF No. 49.)**

Defendants seek to present Fisher's testimony to rebut testimony of

Plaintiffs' expert Connolly.

Plaintiffs contend that Fisher's report is not only wrong, but also that he is

not qualified to testify as an expert in planning and zoning, and that he should not

be permitted to opine on Defendants' motivations.

1. Qualification

Magistrate Judge Ivy held that Fisher is not qualified to testify as an expert

in this case because he does not have education or experience in municipal

planning. (ECF No. 69, at PageID.8571.) This Court disagrees with Magistrate

Judge Ivy and will permit Fisher's testimony as an expert.

Defendants note that Fisher practiced law for 20 years and was the manager

of his firm's municipal practice group, where he represented parties in the areas of

16

land use law, land use relations, and zoning ordinances. (ECF No. 69, at

PageID.8573) (citing ECF No. 49-2, at PageID.6833-36).

Fisher's resume notes that he taught at Western Michigan University Cooley

Law School from 2004-2019, teaching courses on property law, zoning and land

use law, and state and local government law, which included the federal Fair

Housing Act. (ECF No. 69, at PageID.8573) (citing ECF No. 49-2, at

PageID.6826-28).

Recently, Fisher authored a book that devoted a chapter to discriminatory

housing and zoning. (ECF No. 69, at PageID.8573) (citing ECF No. 49-2, at

PageID.6831).

Fisher has been qualified as an expert witness in five cases, one of which

involved a city's zoning authority. (ECF No. 69, at PageID.8573); (ECF No. 49-1,

at PageID.6801); (ECF No. 49-2, at PageID.6849).

This Court recognizes that simply having a law degree does not make one an

expert in all areas of the law, but that is not the case here. The previous paragraphs

clearly establish Fisher's qualifications to testify as an expert witness in this case.

The fact that Fisher is a highly experienced and knowledgeable expert on

zoning and city land use is not undermined by his statement that he is not a

community planning expert.

17

2.  Legal Analysis and Opinions

The Court agrees with Magistrate Judge Ivy's criticism of Fisher's lenghty

initial report: it reads like a law review article and does not respond concisely to

Connolly's initial report. (ECF No. 69, at PageID.8575-76.) Indeed, Fisher's initial

report needlessly re-presents evidence in violation of Federal Rule of Evidence

403.

While this Court notes that Federal Rule of Evidence 704(a) states that "[a]n

opinion is not objectionable just because it embraces an ultimate issue," the

Advisory Committee 1972 notes contain the following cautionary language:

> The abolition of the ultimate issue rule does not lower the
> bars so as to admit all opinions. Under Rule 701 and 702,
> opinions must be helpful to the triers of fact, and Rule
> 402 provides for exclusion of evidence which wastes
> time. These provisions afford ample assurances against
> the admission of opinions which would merely tell the
> jury what result to reach…

Fisher's initial expert report does just that—wastes time and tells the jury what

result to reach.

This Court will, however, permit Fisher to testify on his supplemental report,

in response to Connolly's supplemental report. But, as Magistrate Judge Ivy states:

> If Fisher is found to be qualified and allowed to offer
> expert testimony, he should be precluded from offering
> statements or opinions evincing the defendants' motives
> or intent.

(ECF No. 69, at PageID.8578.) This Court agrees.

## CONCLUSION

For the reasons listed above, the Court:

**GRANTS** Defendants' Motion to Exclude Plaintiffs' proposed expert, Jeffery Van Treese (ECF No. 42).

**HOLDS** Plaintiffs' Motion to Exclude Defendants' proposed expert, Patrick O'Keefe (ECF No. 43) **IN ABEYANCE** until the damages phase of this case.

**GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion to Exclude Defendants' proposed expert, Richard Carlisle (ECF No. 45).

**GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion to Exclude Defendants' proposed expert, Rodney Arroyo (ECF No. 46).

**DENIES** Defendants' Motion to Exclude Plaintiffs' proposed expert, Brian Connolly (ECF No. 47).

**GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion to Exclude Defendants' proposed expert, Gerald Fisher (ECF No. 49).

**SO ORDERED.**

Dated:  August 3, 2022                    s/Paul D. Borman
                                          PAUL D. BORMAN
                                          UNITED STATES DISTRICT JUDGE